## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 29 2019, 7:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul B. Poracky
Koransky, Bouwer & Poracky, P.C.
Dyer, Indiana

ATTORNEY FOR APPELLEE
EDWARD P. GRIMMER

Vincent P. Antaki
Reminger Co., LPA
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Centier Bank,

*Appellant-Defendant,*

v.

Bruce and Sybil Scheffer,

*Appellees-Plaintiffs,*

and

Edward P. Grimmer,

*Appellee-Intervenor.*

August 29, 2019

Court of Appeals Case No.
19A-PL-337

Appeal from the Lake Superior Court

The Honorable Bruce D. Parent, Judge

Trial Court Cause No.
45D11-1212-PL-106

**Bradford, Judge.**

# Case Summary

[1] This is the third appeal in the litigation between Centier Bank and Bruce and Sybil Scheffer ("the Scheffers"). In the prior proceedings, it became clear that there was never a good faith basis for the Scheffers to have proceeded with the lawsuit and attorney's fees were awarded to Centier. On remand, the trial court ordered the Scheffers to pay $68,731.98 in trial attorney's fees and $31,911.60 in appellate attorney's fees, for a total of $100,643.56. The trial court initially determining that the Scheffers' counsel, Edward P. Grimmer, should be jointly liable for the fees. However, after considering the Scheffers' motion to correct error, the trial court determined that Grimmer should not be jointly liable. Centier challenges the trial court's order on appeal, arguing that the trial court abused its discretion by relieving Grimmer of joint liability for the fee award. Concluding that the trial court did not abuse its discretion in this regard, we affirm the judgment of the trial court and deny Centier's request for additional appellate attorney's fees.

# Facts and Procedural History

[2] The facts and procedural history, as set forth in our opinion in the second appeal in this case, are as follows:

> In December 2012, the Scheffers filed a complaint against Centier alleging that they had obtained a loan from Centier's predecessor, The First Bank of Whiting, in 1985 for the purchase of residential real property located on Wexford Road in Valparaiso, Porter County, Indiana, and that the loan had been

secured by a mortgage on the real property and by an assignment of insurance policies on the Scheffers' lives. The life insurance policy assignments, which were dated in November of 1985 and attached to the complaint, provide: "It is understood that this assignment is for the sole purpose of using the policy as collateral security for existing or future loans made by the assignee to the owner." Appellants' Appendix Volume 2 at 35–36. The Scheffers alleged "[t]hat mortgage loan was the only loan that Scheffer had personally with Centier at that time of November 1985," "[t]he assignments were not given or received as collateral for any loan or debt obligation other than that mortgage loan on that residential property," and they paid Centier "all remaining balances on that mortgage loan on or about December 17, 2010." *Id.* at 31. The Scheffers requested a judgment including an order that Centier execute releases of the assignments of the life insurance policies.

Centier filed an answer denying that the life insurance policy assignments related in any way to a mortgage loan on residential real estate. Centier also stated that it entered into a mortgage and note on Wexford Road property in 2002 and that the loan had been paid off in December 2010, and it denied that the loan dealt with any type of mortgage or loan arrangement dating back to 1985. Centier also answered that it had not released the assignments of the life insurance policies because the loan obligations for which they served as collateral had not been satisfied.

The Scheffers moved for summary judgment and designated their own affidavit which alleged that they had owned life insurance policies since 1985 and had assigned the policies as collateral on a promissory note and mortgage on their residential property in 1985. The Scheffers did not designate any documentary evidence of a 1985 residential mortgage or loan with Centier or its predecessor. Centier filed a response and cross-motion for summary judgment and designated the affidavit of Brian Miller, a vice-president for Centier, which stated that Centier had a

business relationship with the Scheffers and Scheffer, Inc., dating before 1985; Centier did not have a residential mortgage loan on the Wexford Road property at that time; in 1985 the Scheffers as owners of Scheffer, Inc., assigned several life insurance policies to Centier as the assignee for the benefit of the commercial loan relationship between the parties; and that the first residential mortgage relationship between Centier and the Scheffers regarding Wexford Road occurred in 2002. The trial court granted Centier's cross-motion for summary judgment and denied the Scheffers' motion for summary judgment. The Scheffers appealed, and Centier cross-appealed.

On March 12, 2015, this Court issued a memorandum decision which reversed the trial court's entry of summary judgment. *See Scheffer v. Centier Bank*, No. 45A03-1410-PL-367, 2015 WL 1142940 (Ind. Ct. App. Mar. 12, 2015).… We concluded that the Scheffers' affidavit, although lacking any documentary support, "was enough to create a genuine issue as to whether the assignments related to a 1985 mortgage on their personal residence rather than loans to their business, Scheffer, Inc.," and that consequently summary judgment was improper. *Id.* at 5. We remanded to the trial court for further proceedings. *Id.*

The trial court held a bench trial over several days in July and August of 2017 at which it admitted documentary evidence and testimony. The Scheffers introduced the life insurance policy assignments which indicated they were executed by them in November of 1985. The Scheffers also introduced a promissory note dated September 18, 2002, signed by them evidencing a loan from Centier in the original principal amount of $225,000 and a satisfaction of mortgage dated December 20, 2010, executed by Centier stating that this mortgage had been fully paid and satisfied and was released.

**\*\*\*\***

Centier's counsel then introduced exhibits containing a warranty deed, a mortgage, and a satisfaction of mortgage, and the court admitted the exhibits. The warranty deed, dated July 22, 1985, evidences the conveyance of the Wexford Road property to the Scheffers, and a file-stamp on the deed indicates it was recorded with the Porter County Recorder on July 25, 1985. The mortgage was signed by the Scheffers and granted a security interest in the Wexford Road property to Indiana Federal Savings and Loan Association as the mortgagee to secure repayment of a debt of $175,000, and a file-stamp on the mortgage indicates it was recorded with the Porter County Recorder on July 25, 1985. Finally, the satisfaction of mortgage, dated January 19, 1987, states that the debt secured by the mortgage executed by the Scheffers in favor of Indiana Federal Savings and Loan Association in July of 1985 was paid and the mortgage was released.

**\*\*\*\***

Bruce acknowledged that the allegation in his complaint that he obtained a loan from the First Bank of Whiting in 1985 for the purchase of the residential property on Wexford Road was a mistake. He also indicated that the allegation that Centier required the Scheffers to assign the life insurance policies as a term of that loan was a mistake.… When asked "I just want to make sure I understand. You're not claiming in 2002 there actually is a residential mortgage with Centier Bank that there were life insurance assignments made at that time, are you," Bruce answered "I'm not—no longer claiming that." *Id.* at 158–159.

Centier filed a motion for judgment on the evidence. The motion asserted that there is no evidence that the Scheffers had a residential mortgage loan on their Wexford Road property with First Bank of Whiting at any time during 1985, that the Scheffers had a residential mortgage loan contract with Indiana Federal Savings and Loan Association on the house which transaction

was consummated in July 1985, and that the life insurance assignments were given for commercial loans because those were the only type of loans the Scheffers had with First Bank of Whiting in 1985.

On August 17, 2017, the trial court issued an order granting Centier's motion for judgment on the evidence, providing in part:

****

11. The Court was somewhat astonished when Mr. Scheffer acknowledged that the mortgage on the Wexler property was with Indiana Federal Savings and he had made a mistake.

12. His mistake was the very foundation of [the Scheffers'] claim. The Court finds it difficult to believe that such a successful businessman would not have accurate knowledge of his personal financial dealings.

13. Upon Mr. Scheffer's testimony, the Court would have expected [the Scheffers] to come to Court today and dismiss their claim.

14. [The Scheffers] have failed to sustain their burden of proof in their case in chief and judgment on the evidence is appropriate.

15. This matter has pended since 2012 and has involved much court time and a great amount of attorney time and expense to both [the Scheffers] and [Centier].

16. There was never a good faith basis to have proceeded with this lawsuit as no 1985 residential mortgage contract with First Bank of Whiting ever existed.

> 17. The Court finds that [the Scheffers] brought this action in bad faith, and continued to maintain the action when it became clearly apparent that it was frivolous, unreasonable and groundless.
>
> Appellants' Appendix at 24–26. Centier submitted an attorney fee request together with an affidavit of attorney fees and costs. The court issued an order awarding attorney fees to Centier in the amount of $68,731.98.

*Scheffer v. Centier Bank*, 101 N.E.3d 815, 817–22 (Ind. Ct. App. 2018) ("*Scheffer II*").

[3] The Scheffers appealed, claiming that the trial court erred in granting Centier's motion for judgment on the evidence. We affirmed, concluding that the record demonstrated that (1) the Scheffers intended to secure the repayment of the loans advanced to them and their companies by Centier's predecessor and (2) "it was not [the Scheffers'] intent that the policies would secure solely the repayment of personal or residential debts which did not exist at the time and would not exist for seventeen years." *Id.* at 825. The Scheffers also claimed that the trial court erred in ordering them to pay attorney's fees. Again, we affirmed, concluding that the evidence supported the trial court's determination that there was never a good faith basis to have proceeding with this lawsuit as no 1985 residential mortgage with Centier's predecessor ever existed. *Id.* at 826.

[4] We also considered Centier's request for appellate attorney's fees, concluding as follows:

> Centier has shown, based on the evidence as set forth above and in the record, that the Scheffers' appeal with respect to the trial court's ruling on its motion for judgment on the evidence is meritless. We remand for a determination of a reasonable appellate attorney fee award under these circumstances. We decline to require the trial court to order that the Scheffers' attorney be held jointly responsible for an attorney fee award in favor of Centier.

*Id.* at 827.

[5] On November 28, 2018, the trial court imposed appellate attorney's fees "in the sum of $31,911.60, which shall be added to the outstanding judgment in the amount of $68,731.98, for a total sum of $100,643.56." Appellant's App. Vol. II pp. 194–95. The trial court ordered that "the [Scheffers'] attorney, Edward P. Grimmer, shall be jointly responsible with the plaintiffs for the judgment entered herein." Appellant's App. Vol. II p. 195. The Scheffers filed a motion to correct error, alleging that the November 28, 2018 order contained four errors: (1) trial court erred by finding Grimmer jointly and severally liable on remand because the only question on remand was the amount of appellate attorney's fees to be imposed; (2) the trial court "went beyond the motions, beyond the briefing, and without any evidence about what might be held reasonable fees, which denied the Scheffers and their attorney due process to contest the award of $31,911.60;" (3) "there is no common law or statutory authority for the award post-judgment collection fees recoverable;" and (4) the trial court abused its discretion by imposing a duty upon Grimmer that was outside the scope of his ability or power. Appellant's App. Vol. II pp. 196–97.

On January 15, 2019, the trial court granted the motion to correct error and amended the November 28, 2018 order by eliminating its prior order that Grimmer be jointly and severally liable for payment of the fees, making the Scheffers solely liable for payment of the sum of $100,643.56 plus interest.

# Discussion and Decision

## I. Motion to Correct Error

[6]     Centier challenges the trial court's decision to grant the Scheffers' motion to correct error. Specifically, it argues that the trial court abused its discretion by relieving Grimmer of liability for payment of the attorney's fees. "A trial court has discretion to grant or deny a motion to correct error and we reverse its decision only for an abuse of that discretion." *Hawkins v. Cannon*, 826 N.E.2d 658, 661 (Ind. Ct. App. 2005), *trans. denied*. "An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Id.*

[7]     In *Scheffer II*, we declined Centier's request that we "require the trial court to order that the Scheffers' attorney be held jointly responsible for an attorney fee award in favor of Centier." 101 N.E.3d at 827. By declining Centier's request, we left the question of whether Grimmer should be jointly responsible for the fee award to the trial court's discretion. The trial court ultimately determined that Grimmer should not be jointly liable.

[8]     Centier argues that the trial court abused its discretion in considering the

motion to correct error. In making this argument, Centier asserts that because

Grimmer was conflicted, he lacked standing to file the motion on behalf of the

Scheffers. Essentially, Centier claims that "Grimmer should not have been

allowed to file" the motion to correct error and the trial court should have

disqualified Grimmer from filing motions and making arguments on behalf of

the Scheffers because Grimmer had a conflict of interest as to whether the

Scheffers should be solely or jointly liable for the fees. Appellant's Br. p. 21. It

is undisputed that at the time he filed the motion to correct error, Grimmer was

the Scheffers' counsel of record. While a conflict may have arisen during this

representation that would warrant the termination of the attorney-client

relationship, neither the Scheffers nor Grimmer had taken any steps to

terminate their relationship prior to the filing of the motion to correct error.

Further, while Centier argues that the trial court should not have ruled on the

motion to correct error, Centier has cited to no relevant authority in support of

this argument. In addition, nothing in the record suggests that the trial court

had been divested of jurisdiction to rule on the motion.[1] As such, we cannot

---

[1] A review of relevant case law indicates that "[o]nce a trial court acquires jurisdiction, it retains jurisdiction until it enters a final judgment in the case." *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998). We have held that a trial court does not lose jurisdiction by committing prejudicial error, applying the wrong principle of law, or making an erroneous decision. *Matter of Adoption of H.S.*, 483 N.E.2d 777, 781 (Ind. Ct. App. 1985). Likewise, the withdrawal of an attorney for a party does not affect the trial court's jurisdiction over the party. *State ex rel. Durham v. Marion Circuit Court*, 240 Ind. 132, 136, 162 N.E.2d 505, 507 (1959). Further, our review of relevant authorities has revealed only three situations where a trial court is divested of jurisdiction. First, when a party files a motion for a change of judge pursuant to Trial Rule 76, the trial court "is divested of jurisdiction except to grant the change of venue or act on emergency matters." *Bedree v. DeGroote*, 799 N.E.2d 1167, 1172 (Ind. Ct. App. 2003). Second, absent a few exceptions, a trial court is divested of jurisdiction following the death of one of the parties in divorce proceedings. *Riggs v. Riggs*, 77

conclude that the trial court abused its discretion by considering a motion filed by counsel of record in a pending case before it.

[9] Furthermore, in arguing that the trial court abused its discretion in granting the motion to correct error, Centier presents numerous allegations of attorney misconduct by Grimmer. While we acknowledge these allegations, we limit our review to the question of whether the trial court abused its discretion in granting the motion to correct error.

## II. Request for Additional Appellate Attorney's Fees

[10] Centier requests that this court impose an award of additional attorney's fees.[2] However, given our conclusion that the trial court did not abuse its discretion in granting the Scheffers' motion to correct error, we decline this request because Centier's contentions did not prevail on appeal. *See Houston v. Booher*, 647 N.E.2d 16, 22 (Ind. Ct. App. 1995) ("A losing party is not entitled to attorney fees.").

[11] The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.

---

N.E.3d 792, 794 (Ind. Ct. App. 2017). Third, a trial court is largely divested of jurisdiction over a case following the initiation of an appeal. *Clark v. State*, 727 N.E.2d 18, 21 (Ind. Ct. App. 2000).

[2] In making this request, Centier requests that we hold Grimmer solely liable for payment of these additional appellate attorney's fees.